Meg K. Allison Zaletel (AK Bar No. 0511091)
Mark Regan (AK Bar No. 8409081)
Disability Law Center of Alaska
3330 Arctic Boulevard, Suite 103
Anchorage, Alaska 99503
Telephone: (907) 565-1002
Facsimile: (907) 565-1000
Email: mallison@dlcak.org
        mregan@dlcak.org

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DISABILITY LAW CENTER OF ALASKA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 3:12-cv-_____ (___) |
| ) | |
| STATE OF ALASKA, DEPARTMENT OF HEALTH ) | |
| AND SOCIAL SERVICES, William Streur, Commissioner, ) | |
| in his official capacity; Division of Health Care; ) | |
| Kimberli Poppe-Smart, Director of Division of Health Care ) | |
| Services, in her official capacity; and Section of ) | |
| Certification and Licensing; ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

### INTRODUCTION

1. Since its opening, the Seward Mountain Haven Nursing Facility has been plagued by problems and several surveys (inspections) and investigations have been conducted by the State that found serious problems placing residents in harmful situations. These problems and serious complaints of abuse and neglect, including the death of a resident, received by the Disability Law

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.* Page 1 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 1 of 17

Center of Alaska, raise issues regarding the quality of care by the facility as well as the adequacy of the surveys, investigations and corrective actions required by the State. In order for the Disability Law Center to investigate both the adequacy of the facility's corrective actions and the State's own surveys and investigations, it needs to review both facility records and State survey and investigation files. The State has refused to provide the requested documents to DLC. Negotiations to obtain the documents failed and now DLC seeks a preliminary injunction and declaratory relief to require the State of Alaska Department of Health and Social Services Division of Health Care Services Section of Certification and Licensing ("Certification and Licensing") to release licensing and certification survey and complaint investigation files for the Seward Mountain Haven Nursing Facility to the designated State of Alaska Protection and Advocacy organization, the Disability Law Center of Alaska, Inc., pursuant to the Disability Law Center's statutory authority to receive these files under the Developmental Disabilities Act (DD Act), 42 U.S.C. § 10801 et seq., the Protection and Advocacy of Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 15001 et seq., and the Protection and Advocacy for Individual Rights Act (PAIR), 29 U.S.C. § 794e.

## JURISDICTION AND VENUE

2. The United States District Court has jurisdiction of this civil action pursuant to 28 U.S.C. §§ 1331 and Rule 65 of the Federal Rules of Civil Procedure.

3. Venue is proper in the District of Alaska under 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to these claims occurred in the District of Alaska.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*          Page 2 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 2 of 17

## PARTIES

4.      Plaintiff Disability Law Center of Alaska, Inc. is the designated Protection and Advocacy ("P&A") system for the State of Alaska. The Disability Law Center is a nonprofit corporation duly organized in accordance with the laws of the State of Alaska. Its principal place of business is in Anchorage, Alaska. The Disability Law Center also operates permanent offices in Juneau and Fairbanks.

5.      Defendant Alaska Department of Health and Social Services is the agency for the State of Alaska responsible for administering the divisions and sections located within its department, which include the Division of Health Care Services and the Section of Certification and Licensing.

6.      Defendant William Streur is the Commissioner of the Alaska Department of Health and Social Services and is named as a defendant in his official capacity as Commissioner.

7.      Defendant Alaska Division of Health Care Services is the division for the State of Alaska responsible for overseeing the Section of Certification and Licensing.

8.      Defendant Kimberli Poppe-Smart is the Acting Director of the Division of Health Care Services and is named as a defendant in her official capacity as Acting Director.

9.      Defendant Section of Certification and Licensing is a unit in the Division of Health Care Services, Alaska Department of Health and Social Services is responsible for determining whether all health care facilities in the State, including nursing homes, meet State and Federal standards. Certification and Licensing in its role as a surveying and licensing entity is responsible for ensuring that Medicaid and Medicare facilities are in compliance with federal conditions of participation.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*          Page 3 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 3 of 17

## BACKGROUND

10. Congress established minimum requirements for nursing homes that want to provide services under Medicare and Medicaid. These requirements are broadly outlined in the Social Security Act. The Social Security Act also entrusts the federal Secretary of Health and Human Services (DHHS) with the responsibility of monitoring and enforcing these requirements. Centers for Medicare and Medicaid Services (CMS), a DHHS agency, is also charged with the responsibility of working out the details of the law and how it will be implemented, which it does by writing regulations and manuals and overseeing State compliance activities.

11. CMS has contracted with each State to conduct onsite inspections (surveys) that determine whether its nursing homes meet the minimum Medicare and Medicaid quality and performance standards. Those inspections are called surveys and surveys in Alaska are generally conducted by Certification and Licensing.

12. In addition to performing inspections for CMS, Certification and Licensing also undertakes independent licensure surveys and complaint investigations of nursing homes pursuant to its authority under AS 18.30.300 et seq.

13. Based on information and belief, state licensing and complaint investigations are conducted in a very similar manner to CMS survey visits conducted by Certification and Licensing staff and are generally conducted in conjunction with a CMS survey.

14. Based on information and belief, licensing and certification files contain, including but not limited to, written notice of deficiencies that are found to cause Immediate Jeopardy, interview notes, notes from records reviews, observation notes, a statement of deficiencies, notice of termination or other sanctions, an allegation of credible compliance, notice of revisit, submission of the Plan of

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*     Page 4 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 4 of 17

Correction, notice that the Plan of Correction appears acceptable or needs further revision, and notice of a revisit.

15. Based on information and belief, Certification and Licensing does not keep separate files for the work it performs under its State authority from the surveys it conducts at the behest of CMS.

16. Based on information and belief, Certification and Licensing is the custodian of the survey files for surveys it conducts at the behest of CMS.

**Protection and Advocacy Investigatory Authority**

17. The Protection and Advocacy (P&A) System comprises the nationwide network of congressionally mandated, legally based disability rights agencies. In response to the public outcry about the abuse and neglect of individuals with disabilities in institutional care, the U.S. Congress in 1975 mandated the creation of P&A agencies in every state and territory. The purpose of this nationwide system is to provide for the protection of and advocacy for the legal, civil, and human rights of persons with mental or physical disabilities. P&A agencies have unique authority under federal law to enforce both state and federal laws concerning the rights and benefits of individuals with disabilities. This authority includes initiating investigations of abuse and neglect in institutions that serve individuals with disabilities.

18. P&A organizations, including the Disability Law Center, carry out their federal mandates under the statutory authority provided by the DD Act, PAIMI Act and PAIR Act which provide P&A organizations with the authority to investigate complaints of abuse and neglect received regarding individuals with disabilities residing in facilities that provide care and treatment. *See* 42 U.S.C. 10805; 42 U.S.C. § 42 U.S.C. § 15043 and 29 U.S.C. § 794e. The PAIR Act is governed by the same provisions as the DD Act. 29 U.S.C. 794e(f)(2).

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.* Page 5 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 5 of 17

19. One of the major roles P&A organizations play in the role of investigating complaints of abuse and neglect is to ensure that state agencies charged with investigating abuse and neglect under state and federal law, such as state licensing agencies, conduct thorough and timely investigations and provide for appropriate remedies of any problems found.

20. In order to conduct a full investigation into abuse and neglect at Seward Mountain Haven, including the falls that residents suffered there and to assess the adequacy of the Certification and Licensing surveys and investigations, the Disability Law Center needs to review all of the information the regulations implementing the DD Act and the PAIMI Act require be made available to it. These regulations provide P&A organizations with access to:

> (2) Reports prepared by an agency charged with investigating abuse, neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself, that describe any or all of the following:
>
> (i) Abuse, neglect, or injury occurring at the facility;
>
> (ii) The steps taken to investigate the incidents;
>
> (iii) Reports and records, including personnel records, prepared or maintained by the facility, in connection with such reports of incidents; or
>
> (iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.

42 CFR 51.1(c)(2)(i)-(iv).

21. As explained in the preamble to the regulatory access provisions, Protection and Advocacy organizations must have sufficient access to records, like survey files, to determine "whether the investigation of another agency or facility was sufficiently thorough." 62 FR 53548-53559-60.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.* Page 6 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 6 of 17

## FACTS

22. On April 5, 2011, the Disability Law Center, as the State of Alaska designated Protection and Advocacy (P&A) system, initiated an investigation into complaints of abuse and neglect at the Seward Mountain Haven Nursing Facility in Seward, Alaska.

23. Specifically, the Disability Law Center received complaints that a resident had died because the Seward Mountain Haven Nursing Facility failed to take adequate precautions against a resident's falls. The Disability Law Center also received complaints that two other residents had fallen and had been hospitalized.

24. The Disability Law Center received the deceased resident's records. The resident was initially admitted to the nursing facility for dementia and was determined to be at risk for falls. The resident suffered at least two falls during the spring and summer of 2010. The resident fell a subsequent time on October 14, 2010, resulting in a left hip fracture. The resident subsequently developed pneumonia as a complication to her hip fracture and died.

25. Although Seward Mountain Haven Nursing facility was ordered by the Certification and Licensing to review fall potential and develop safety plans, it is impossible to discern from either the text of Certification and Licensing's orders or the nursing facility records exactly how the resident fell or if precautions were taken by nursing facility staff to prevent falls and if so, if those precautions were followed. Also, it is impossible to discern from the text of Certification and Licensing's orders or the nursing facility's records whether the resident would have suffered the respiratory distress and died if she had not fallen in the first instance.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*     Page 7 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 7 of 17

26. Another resident with dementia and cognitive deficits suffered a fall on April 22, 2010 at Seward Mountain Haven Nursing Facility. The incident report from the fall indicates that as a result of the fall that she fractured her left hip. While the nursing facility records indicate that she was not aware of her safety needs, it is unclear whether the resident had been placed on fall precautions prior to this incident.

27. A third resident who is unable to speak or communicate his needs fell on May 25, 2011 in his room where he was found around 6 p.m. The resident was taken to the hospital for a laceration to his left eyebrow. The nursing facility's records noted that he required assistance in moving and due to a cognitive impairment was unaware of his safety needs. The resident's records noted that his fall precautions were not updated when he moved from one wing of the nursing facility to another and that the facility was deficient in making the hourly checks on the resident the day of the fall for a period of three hours from 3 p.m. until the resident was found on the floor at 6 p.m.

28. On information and belief, Certification and Licensing investigated all three of these incidents, generating surveyor's notes, file reviews and interview notes.

29. As part of its investigation, on April 5, 2011, the Disability Law Center requested licensing and certification survey files for the Seward Mountain Haven Nursing Facility from the State of Alaska Section of Certification and Licensing to determine whether Certification and Licensing had investigated the complaints of abuse and neglect the Disability Law Center had received or found similar issues concerning falls at the facility during its surveys and licensing investigations.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*           Page 8 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS Document 1 Filed 03/01/12 Page 8 of 17

30. Specifically, the Disability Law Center requested the survey files for Seward Mountain Haven Nursing Facility expecting to receive records, including, but not limited to, the notes of the surveyors, any correspondence between Certification and Licensing and the nursing facility, names and contact information for residents where the surveyors found deficiencies related to the care and treatment, including the implementation of fall protocols for residents identified as being at risk for falls.

31. In response to the Disability Law Center's request, the State of Alaska Section of Certification and Licensing provided the Disability Law Center with the Statements of Deficiencies and the Plans of Correction for the Seward Mountain Haven Nursing Facility for several survey visits it has conducted under its delegated authority from CMS.

32. From the records provided by Certification and Licensing, it appears that in July 2011, Certification and Licensing cited the nursing facility for failure to complete full assessments, including specific risk factors and conditions, creating an increased potential for falls and/or injury. The citation from that survey indicates that a resident fell on June 23, 2010 from the commode to the floor. The Plan of Correction indicates that beginning on August 30, 2010 the nursing facility was to conduct assessments of residents' functional capacity and develop appropriate care plan interventions. These assessments and care plans are to be done upon admission to the facility and then on a quarterly basis.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*  Page 9 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 9 of 17

33. Less than a month later, federal surveyors from CMS conducted an unannounced inspection of the nursing facility. During that inspection, CMS noted deficiencies, particularly in the area of safety assessment, which includes development of fall precautions. The surveyors noted at least one resident had fallen from his wheelchair onto the floor and that the staff was unsure where to find the safety assessment for the resident although the resident was identified as needing fall prevention.

34. Another citation in the Statement of Deficiencies indicates a resident had fallen out of bed as staff went to turn her. That same resident apparently suffered a second fall the same week when she fell off the toilet. The nursing facility had been unable to determine which of the two falls resulted in her fractured leg. The summary of the falls in the Statement of Deficiencies indicates serious concerns regarding the facility's documentation of the fall and whether the resident was properly assessed following the falls, noting that the resident had exhibited signs of acute pain for five days before the facility intervened on her behalf and transferred the resident to the emergency room.

35. After reviewing the Statements of Deficiencies and Plans of Correction provided by Certification and Licensing, the Disability Law Center found that Certification and Licensing had found problems related to resident falls and required the facility to implement Plans of Correction; yet it appeared that even with the Plans of Correction in place that resident falls continued.

36. The Disability Law Center received an additional complaint of a resident suffering a fall in February 2011.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*     Page 10 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS     Document 1     Filed 03/01/12     Page 10 of 17

37. In May of 2011, even though Seward Mountain Haven Nursing Facility had been cited numerous times for inadequate fall assessments, precautions and response, it was cited again for inappropriate response after a resident with quadriplegia had fallen out of bed. Although the fall required a visit to the emergency room because the resident had hit his head during the fall, after returning the nursing facility the resident was left in his room unattended for almost five hours without any follow up.

38. Through receipt of the Statements of Deficiencies, the Disability Law Center was alerted to other deficiencies found by Certification and Licensing concerning resident falls and learned of falls that were not the subject of the original complaints the Disability Law Center had received.

39. As a result of the complaints of abuse and neglect already received and the numerous deficiencies found by CMS and Certification and Licensing, the Disability Law Center determined probable cause existed that abuse or neglect had taken place at Seward Mountain Haven Nursing Facility concerning the identification of residents at risk for falls, the implementation of appropriate fall precautions and the adequacy of the facility's response to falls and proceeded with its investigation.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*     Page 11 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 11 of 17

40. In order to assess the sufficiency of the surveys and licensing inspections conducted by the Certification and Licensing and determine if the Plans of Correction approved by Certification and Licensing concerning residents falls were appropriate and had been properly implemented, the Disability Law Center requested the survey and licensing files that contain all of the documents underlying the Statements of Deficiencies and Plans of Correction concerning the Seward Mountain Haven Nursing Facility, including, but not limited to, the surveyors' notes, file reviews, interview notes and other documents generated as a result of the survey.

41. The Disability Law Center's requests for the certification and licensing files were denied by Certification and Licensing.

42. To date, the files have not been released or made available to the Disability Law Center and the Disability Law Center continues to have grave concerns regarding the state and federal oversight of the Seward Mountain Haven Nursing Facility, especially with regard to resident's quality of care and safety as it appears the issue of resident falls has not subsided.

43. The information in the surveyor's notes, file reviews and interview notes is essential for the Disability Law Center to determine whether the surveying and investigation system worked. Because there have been a series of citations and corrective plans, it is very important for the Disability Law Center to be able to review those materials to see what the surveyors learned about how the facility had been responding to earlier versions of the citations and corrective action plans.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*   Page 12 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 12 of 17

44. Only through obtaining the requested documentation from Certification and Licensing can the Disability Law Center determine whether Certification and Licensing is adequately carrying out its investigatory responsibilities under state and federal law and ensuring that residents of the Seward Mountain Haven Nursing Facility receive adequate and appropriate care in a safe environment and that the rash of falls experienced by residents over the last two years are abated and appropriate fall precautions are implemented by the facility.

## FIRST CAUSE OF ACTION
## Violation of the DD Act, 42 U.S.C. § 15043

45. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

46. The DD Act provides that Protection and Advocacy organization shall have access to "other records that are relevant to conducting an investigation, under the circumstances described in those subparagraphs, not later than 3 business days after the system makes a written request for the records involved." 42 U.S.C. § 15043(a)(2)(J)(i).

47. Records are defined in the DD Act to include, report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location that describes such incidents and the steps taken to investigate such incidents. 42 U.S.C. § 15043(c)(2).

48. The Disability Law Center as the designated Protection and Advocacy organization for the State of Alaska requested the certification survey and licensing files from Certification and Licensing as part of its investigation into complaints and probable cause determination that abuse and neglect is occuring at Seward Mountain Haven Nursing Facility.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*  Page 13 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 13 of 17

49. The survey and licensing files and complaint investigation files are records as defined by the DD Act.  *See also* 45 C.F.R. § 1386.22(b)(2).

50. Certification and Licensing has not provided the certification survey and licensing files or complaint investigation files to the Disability Law Center within the statutory timeframe of 3 business days from the date of its request.

51. Failure by Certification and Licensing to provide the certification survey and licensing files and the complaint investigation files to the Disability Law Center in the statutory timeframe violates the DD Act and its implementing regulatory provisions.

## SECOND CAUSE OF ACTION
### Violation of PAIMI Act, 42 U.S.C. § 10806

52. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

53. The PAIMI Act provides that Protection and Advocacy organization shall have access to records to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805(a)(1)(A).

54. Records are defined by the PAIMI Act as to "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records." 42 U.S.C. § 10806(b)(3)(A);

55. The Disability Law Center as the designated Protection and Advocacy organization for the State of Alaska requested the certification survey and licensing files from Certification and

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*  Page 14 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 14 of 17

Licensing as part of its investigation into complaints of abuse and neglect at Seward Mountain Haven Nursing Facility.

56. The Disability Law Center has made a finding that there is probable cause to believe that abuse and/or neglect has occurred at Seward Mountain Haven Nursing Facility. The probable cause determination was disclosed to Certification and Licensing.

57. The certification survey and licensing files and complaint investigation files are records as defined by the PAIMI Act. *See also* 42 C.F.R. § 51.41(c)(2).

58. Certification and Licensing has not provided the certification survey and licensing files or the complaint investigation files to the Disability Law Center.

59. Failure by Certification and Licensing to provide the certification survey and licensing files and the complaint investigation files to the Disability Law Center violates the PAIMI Act and its implementing regulatory provisions.

## THIRD CAUSE OF ACTION
### Violation of PAIR Act, 29 U.S.C. § 794e

60. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

61. The PAIR Act authorizes Protection and Advocacy organizations to provide assistance to individuals with disabilities that are ineligible for assistance under either the DD Act or the PAIMI Act. 29 U.S.C. § 794e(a)(1)(B)(i)-(ii).

62. The PAIR Act provides that Protection and Advocacy organizations shall have "the same general authorities, including access to records and program income, as are set forth in subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (42 U.S.C.A. § 15041 et seq.)." 29 U.S.C. § 794e(f)(2).

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*     Page 15 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 15 of 17

63. Certification and Licensing's refusal to provide the Disability Law Center with the requested survey certification and licensing files and complaint investigation files violates the PAIR Act in the same manner as it violates the DD Act.

### FOURTH CAUSE OF ACTION
### Violation of The Rehabilitation Act of 1973, 29 U.S.C. §§ 791-794e

64. The residents at Seward Mountain Haven Nursing Facility have the right under the Rehabilitation Act of 1973 to have complaints of abuse and neglect investigated by the designated State Protection and Advocacy organization to the same extent as other individuals with disabilities residing in licensed facilities.

65. Certification and Licensing receives federal financial assistance, for the nursing facility survey activities it conducts at the behest of CMS. Under the Rehabilitation Act of 1973, 29 U.S.C. § 794, "No otherwise qualified individual with a disability in the United States, as defined in section 705 (20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

66. Certification and Licensing restrictions preventing the Disability Law Center from accessing the requested survey files violates the nursing facility's residents' rights under the Rehabilitation Act of 1973.

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*     Page 16 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 16 of 17

# REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests for the following relief:

1. An injunction ordering Certification and Licensing to provide the requested survey and licensing files to the Disability Law Center pursuant to the Disability Law Center's statutory and regulatory authority under the DD Act, PAIMI Act and PAIR Act;

2. A declaration that Certification and Licensing's treatment of the Disability Law Center's request for certification survey and licensing files of a nursing facility is in excess of its authority, arbitrary, capricious, or otherwise contrary to law;

3. A declaration that Certification and Licensing must provide the Disability Law Center nursing facility certification survey and licensing files under the Disability Law Center's statutory and regulatory authority under the DD Act, PAIMI Act and PAIR Act, including all applicable statutory timelines for records production or inspection.

4. A ddeclaration that the Disability Law Center is the prevailing party for purposes of attorneys' fees pursuant to federal or state law.

5. All other relief the Court deems just and equitable.

Dated: March 1, 2012             Respectfully submitted,

/s/ Meg K. Allison Zaletel
Meg K. Allison Zaletel (AK Bar No. 0511091)
/s/ Mark Regan
Mark Regan (AK Bar No. 8409081)
Disability Law Center of Alaska
3330 Arctic Boulevard, Suite 103
Anchorage, Alaska 99503
Telephone: (907) 565-1002
Facsimile: (907) 565-1000
Email: mallison@dlcak.org
        mregan@dlcak.org

*Disability Law Center, Inc. v. Alaska Dept. of Health and Social Services, et al.*   Page 17 of 17
Case No. 3:12-cv-_____ (___)

Case 3:12-cv-00050-JWS   Document 1   Filed 03/01/12   Page 17 of 17